[No. C021002. Third Dist. Feb. 10, 1997.]

THE PEOPLE, Plaintiff and Respondent, v.
STEVEN RAY COLEY, Defendant and Appellant.

**[Opinion certified for partial publication.\*]**

*Pursuant to California Rules of Court, rule 976.1, this opinion is certified for publication with the exception of parts II through VIII of the Discussion.

**COUNSEL**

Richard M. Doctoroff, under appointment by the Court of Appeal, for Defendant and Appellant.

Daniel E. Lungren, Attorney General, George Williamson, Chief Assistant Attorney General, Robert R. Anderson, Assistant Attorney General, Michael J. Weinberger and Roger E. Venturi, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

**NICHOLSON, J.**—The defendant assaulted a bartender and the mother of his son. A jury convicted him of assault with a deadly weapon and other crimes, and the trial court found he suffered two prior felony convictions pertinent to the "Three Strikes" law. Sentenced to state prison for 25 years to life, he appeals. In the published portion of this opinion, we reject his contention the verdicts of the jury and the trial court must be reversed because the trial court lost the exhibits from trial. We hold a defendant must move to have lost exhibits reconstructed before he can contend on appeal that they were insufficient to sustain the verdicts. Accordingly, we affirm the convictions but, for reasons explained in the unpublished portion of this opinion, vacate the sentence and remand for the trial court to exercise its discretion in determining whether to strike the priors.

### FACTS AND PROCEDURE

On the evening of June 20, 1994, the defendant went to T.C.'s Sports Bar in Redding. Later, Marlena Brady entered the bar. She was the mother of the defendant's 12-year-old son, but the defendant and Brady had not lived together for 12 years and were not friendly. The defendant eventually approached Brady, confronted her about wanting to see their son, and threw a glass of beer in her face. She tried to stand up, but the defendant pushed her to the floor. The bartender, Leslie Stickney, got between the defendant and Brady and, while the defendant yelled at them, told Brady to go into the kitchen area.

The defendant lunged at Brady, but Stickney and a bar patron prevented him from getting to her. They tried to push him out of the bar, but the

defendant drew and opened a large Buck-type knife with a locking blade. Stickney tried to get the defendant to put the knife away. Instead, he threatened Brady, who was about 20 feet away, and then made slashing and jabbing motions toward Stickney. She jumped out of the way to avoid injury. Other bar patrons approached the defendant from behind and wrestled the knife away from him. He began swinging a cane he had been carrying and threw it at Stickney. Finally, a group pushed him, still yelling and fighting, out of the bar.

The defendant was charged with assault with a deadly weapon on Stickney (count 1, Pen. Code, § 245, subd. (a)(1)), two counts of exhibiting a deadly weapon (counts 2 and 3, Pen. Code, § 417, subd. (a)(1)), battery (count 4, Pen. Code, § 242), disturbing the peace (count 5, Pen. Code, § 415, subd. (1)), and public intoxication (count 6, Pen. Code, § 647, subd. (f)). The information also alleged the defendant had suffered a conviction for burglary in 1986 and convictions for robbery and kidnapping (later proved to be attempted kidnapping) in 1982. (See Pen. Code, §§ 667, subds. (d) & (e).) The court dismissed count 6, and a jury convicted the defendant of the remaining counts. The defendant waived jury trial on the prior convictions, and, after a hearing, the court found the allegations to be true.

The trial court sentenced the defendant to a term in state prison of 25 years to life. It also sentenced the defendant concurrently to 180 days for each misdemeanor and 1 year each for the prior prison terms. (Pen. Code, § 667.5, subd. (b).) He appeals.

Additional facts and procedural history are contained in the discussion.

### DISCUSSION

### I

### *Failure to Move for Reconstruction of Lost Exhibits*

In his first two contentions on appeal, the defendant claims the evidence does not support (1) his convictions for assault with a deadly weapon and brandishing a deadly weapon and (2) the true findings on the prior felony convictions. He does not assert the evidence seen and heard by the jury and the court was insufficient; instead, he bases his claims entirely on the trial court's posttrial loss of exhibits. Because the knife he used in the crimes and the documents showing his prior convictions cannot be examined on appeal, he argues, the evidence is insufficient to sustain those convictions and findings. We conclude the defendant has not properly raised these issues.

At trial, the prosecution produced the knife the defendant used in the crimes and documentation supporting the allegations of prior convictions. The exhibits were marked and admitted. When the trial was completed, a court services assistant placed the exhibits in the court's exhibit room. Later, in response to a motion to augment, the court services assistant went to retrieve the exhibits from the exhibit room. She could not find them. After a search of the exhibit room, the file room, and other locations by several people, the court services assistant certified to this court that the exhibits could not be found.

Seizing upon this administrative dereliction, the defendant argues we must reverse his convictions and findings of prior convictions because the actual exhibits are not available to us for review. Perhaps recognizing there is no rule of appellate procedure which mandates reversal per se for lost trial exhibits, he frames his argument in terms of insufficiency of evidence. He cites no authority allowing such an attack. Indeed, reversal for insufficiency of evidence when exhibits are not available for appellate review is not now and never has been the law. The situation gives rise to, at most, a due process of law violation, not an insufficiency of evidence claim. (See *People* v. *Osband* (1996) 13 Cal.4th 622, 663 [55 Cal.Rptr.2d 26, 919 P.2d 640].) █ The distinction is significant because reversal for insufficiency of the evidence bars retrial, while reversal for a due process violation may not. (*People* v. *Bryant* (1992) 10 Cal.App.4th 1584, 1597 [13 Cal.Rptr.2d 601].)

█ Reconstruction of exhibits is essentially the same as preparing a settled statement for unreported portions of trial proceedings; it provides "evidence," for want of a better term, of the trial proceedings. Even what appears to be a verbatim transcript is an imperfect representation of the trial proceedings. Such "verbatim" transcripts are commonly challenged and "corrected" after trial. (See *People* v. *Chessman* (1950) 35 Cal.2d 455, 461 [218 P.2d 769, 19 A.L.R.2d 1084].) Moreover, they fail to reflect demeanor and other factors observed by the trier of fact, whether judge or jury. Our system of appellate review is grounded in common sense and the real world. Trial court proceedings are imperfect, as are appellate proceedings. This is not to say close is good enough. We merely observe we always deal with all the errors and imperfections, conscientiously and cautiously, to determine whether a miscarriage of justice has occurred. (Cal. Const., art. VI, § 13.) If it has, we reverse. If it has not, we affirm.

█ Criminal defendants are entitled to due process, not perfect process. (See *In re Carpenter* (1995) 9 Cal.4th 634, 649 [38 Cal.Rptr.2d 665, 889 P.2d 985], stating defendants are not entitled to perfect proceedings; see also Fleming, The Price of Perfect Justice—The Adverse Consequences of Current Legal Doctrine on the American Courtroom (1974).) Thus, an imperfect

representation of the exhibits is not grounds for reversal unless it is reasonably probable the outcome is affected by the deficiencies in the record. (*People* v. *Osband, supra*, 13 Cal.4th at p. 664.) Even if a judgment is reversed because lost exhibits prevent meaningful appellate review, the reversal is not due to the prosecution's failure to prove its case; therefore, retrial is permitted. (See *People* v. *Shirley* (1982) 31 Cal.3d 18, 71 [181 Cal.Rptr. 243, 723 P.2d 1354].)

■ While the defendant is entitled to a record adequate to afford a meaningful appeal, he bears the burden to show the deficiencies in the record are prejudicial. (*People* v. *Howard* (1992) 1 Cal.4th 1132, 1165 [5 Cal.Rptr.2d 268, 824 P.2d 1315].) That burden is not carried by simply citing an administrative dereliction. Lost exhibits may be reconstructed in many instances. (See *People* v. *Osband, supra*, 13 Cal.4th at pp. 661-663.) If they can be reconstructed, the appellate court can review them as if they had not been lost, with no resulting prejudice to the defendant. As models or replicas are admissible in the absence of an actual piece of evidence to assist the jury, reconstructed exhibits similarly assist the appellate court. (See *People* v. *Kynette* (1940) 15 Cal.2d 731, 755 [104 P.2d 794].) ■ Consequently, it would be a violation of the constitutional requirement that we not reverse a conviction absent prejudice if we were to reverse a conviction because the exhibits were lost when no attempt has been made to reconstruct them. (Cal. Const., art. VI, § 13.) The test is whether the exhibits can be reconstructed sufficiently to determine there was no prejudicial error at trial.

In *Osband*, the trial court clerk's office destroyed many of the trial exhibits after the capital trial concluded. The Supreme Court ordered the trial court to hold hearings to (1) determine which exhibits were lost, (2) attempt to reconstruct them, and (3) prepare and certify a settled statement concerning the exhibits that could not be reconstructed. (13 Cal.4th at p. 661.) The trial court reconstructed 62 exhibits, all photographs, by developing new prints from the original negatives. The court was unable to identify the exact negative for twelve other exhibits but narrowed its search to between two and five negatives. The court was unable to reconstruct six exhibits; however, it described those exhibits in a settled statement. (*Id.* at p. 662.)

The *Osband* court undertook a two-pronged analysis of the trial court's response to its order and of the defendant's appeal. First, the court concluded substantial evidence supported the trial court's reconstruction and settled statement, with the exception of one reconstructed exhibit. And second, the court determined the reconstructed record, including the settled statement, was adequate to allow meaningful review. (*People* v. *Osband, supra*, 13 Cal.4th at p. 662.)

Regarding the second prong of the inquiry, the *Osband* court stated: "The exhibits 'admitted into evidence or refused' are part of the record on appeal. (Cal. Rules of Court, rule 4.5.) Defendant is entitled to a record 'adequate to permit meaningful appellate review.' (*People* v. *Howard* (1992) 1 Cal.4th 1132, 1165 [5 Cal.Rptr.2d 268, 824 P.2d 1315] [impliedly considering state and federal law]; see also *id.* at p. 1166 [explicitly addressing Eighth and Fourteenth Amendment requirements].) But the burden is his to show that the deficiencies in the record are prejudicial to him. (*Id.* at p. 1165.) The parties were able either to reconstruct or to issue a settled statement regarding virtually the entire record. The reconstruction restored most of the record; the settled statement provided a satisfactory substitute for other portions (*People* v. *Holloway* (1990) 50 Cal.3d 1098, 1116 [269 Cal.Rptr. 530, 790 P.2d 1327]). Although the record as reconstructed remains deficient, defendant has not met his burden of showing that the deficiencies—the loss of certain exhibits and the court's inability to assign an exact replacement photograph to each of 12 original photographic exhibits—have left him unable to proceed with his appeal on a record adequate to permit meaningful appellate review." (*People* v. *Osband, supra,* 13 Cal.4th at p. 663.)

*Osband* plows no new ground. (*People* v. *Chessman, supra,* 35 Cal.2d 455.) In *Chessman,* the court reporter died before he completed the transcription of the testimony at the defendant's trial from shorthand notes taken at trial. Another reporter attempted to complete the transcription from the notes, aided by the trial judge's notes. After hearing objections and making some amendments, the trial court approved the transcript. (*Id.* at pp. 458-459.) On appeal, the defendant asserted the record was not made according to the Rules of Court. ■ The Supreme Court, however, rejected the assertion, concluding the determinative issue is "whether there is or can be made available a record on which this court can perform its function of reviewing the cause and determining whether there was error in the court below and, if so, whether such error requires reversal. If a record can be 'prepared in such a manner as to enable the court to pass upon the questions sought to be raised' (3 Am.Jur. 212), then there is no rational likelihood or legally cognizable possibility of injustice to the appealing defendant even though a verbatim record certified by the official court reporter cannot be supplied." (*Id.* at p. 460.)

■ The *Chessman* court concluded: "On this appeal, as in every appeal, it is to be presumed that defendant has been accorded a fair trial and that the judgment of conviction is valid. We perceive no legal impropriety and no unfairness in placing on an appellant in the situation of Chessman the burden of showing either prejudicial error in the record or that the record is so inadequate that he is unable to show such error. Inconsequential inaccuracies

or omissions in a record cannot prejudice a party; if in truth there does exist some consequential inaccuracy or omission, the appellant must show what it is and why it is consequential. The situation is similar to that in *People* v. *Botkin* (1908), 9 Cal.App. 244 249 [98 P. 861], where the court said, 'we know of no rule that permits us to presume that defendant did not have a fair trial because a portion of the record upon . . . appeal has been destroyed without fault of either party.' " (*People* v. *Chessman, supra,* 35 Cal.2d at p. 462, ellipsis in original.)

■ In this case, we were informed of the lost exhibits during the pendency of this appeal; however, we had no reason to order the trial court to reconstruct them. Indeed, it would be wasteful to order reconstruction as a matter of course any time an exhibit is lost. Many exhibits are immaterial to the issues to be reviewed and, as stated in *Chessman,* it is presumed the conviction is valid. (35 Cal.2d at p. 462.) An appellant has the burden to perfect the appeal and to show error and resulting prejudice. To carry this burden, the defendant must move for reconstruction of lost exhibits because, without at least an attempt at reconstruction and a settled statement concerning any exhibit that cannot be reconstructed, the defendant cannot show the loss of the exhibits resulted in prejudice to his right to a record adequate to afford meaningful appellate review. (See *People* v. *Osband, supra,* 13 Cal.4th at p. 663.)

This case is a good example of when the defendant might not choose to move for reconstruction of an exhibit. While he disingenuously argues to the contrary in his opening brief, he fails to acknowledge the knife he used in the attack is described in testimony as a large Buck-type knife with a locking blade. Under the circumstances, there is no chance that, once the exhibit is reconstructed—that is, the court either concludes on a detailed description or reasonable replica of the knife introduced into evidence at trial—this court will find it is not a deadly weapon. (See *People* v. *Simington* (1993) 19 Cal.App.4th 1374, 1381 [23 Cal.Rptr.2d 769] [defining "deadly weapon" as "any object, instrument, or weapon which is used in such a manner as to be capable of producing, and likely to produce, death or great bodily injury"].)

Since an appellant bears the burden of perfecting the appeal and showing error and resulting prejudice, it follows that the appellant must move for an order from the appellate court to the trial court to reconstruct the lost exhibit as a prerequisite to asserting the evidence, including the exhibit, is insufficient to sustain the conviction. This does not imply that the loss of the exhibit is the fault of the defendant here; instead, it comports with the general appellate process in which one who asserts prejudicial error in a lower court judgment bears the burden of showing the appellate court both error and prejudice.

The defendant argues we should follow a juvenile case from another district of the Court of Appeal in which the court reversed a finding the minor possessed a switch blade knife. (*In re Roderick S.* (1981) 125 Cal.App.3d 48, 53 [177 Cal.Rptr. 800].) In *Roderick S.*, the testimonial evidence was insufficient to establish the knife was a switchblade, and the knife, introduced as an exhibit at trial, was destroyed before the appellate court could examine it. The court stated: "The effect of this unauthorized destruction of the knife is to preclude this court from making an examination on its own of the critical bit of evidence in this case. While there is substantial oral evidence the blade was over two inches in length, nevertheless, the testimony as to the manner in which the blade may be opened does not conform to the statutory language describing the specified ways in which a proscribed switch-blade knife will open. Absent a testimonial description which would constitute evidence, substantial in nature before the juvenile court, and now absent the device itself, this court is unable to ascertain whether the judge's view of the knife was in fact substantial evidence supporting the trial court's finding. The unauthorized destruction of the knife denies Roderick the opportunity for a fair appellate review of the evidence and is a denial of due process." (*Id.*, at p. 63.)

We are not persuaded by *Roderick S.* because the court did not consider the possibility of reconstructing the exhibit or obtaining a settled statement. Instead, it impliedly presumed it could not be reconstructed. In light of high court authority reviewing a judgment by considering reconstructed exhibits, the defendant may not challenge the sufficiency of the evidence solely on the basis that the exhibits considered by the jury are now lost. Since the defendant made no effort to obtain reconstruction of lost exhibits, his contentions concerning the sufficiency of the evidence are not properly raised.

## II-VIII*

.   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .

### Disposition

The convictions are affirmed. The sentence is vacated and the matter remanded to the trial court for the purpose of allowing the court to exercise its discretion whether to strike the defendant's prior serious felony convictions. If the trial court strikes one or more of the priors, it shall resentence defendant. If the trial court declines to strike the priors, it shall reinstate the

---

*See footnote, *ante*, page 964.

sentence previously imposed, modifying the minimum term and the sentence on count 5 to conform to law as discussed in this opinion.

Sims, Acting P. J., and Morrison, J., concurred.

Appellant's petition for review by the Supreme Court was denied May 14, 1997.