Filed 8/26/15

**CERTIFIED FOR PARTIAL PUBLICATION**\*

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| THE PEOPLE, | B259909 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. BA408087) |
| v. | |
| SAVON GIBSON, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Drew E. Edwards, Judge.  Affirmed.

Michele A. Douglass, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Lance E. Winters, Assistant Attorney General, Scott A. Taryle and Michael C. Keller, Deputy Attorneys General, for Plaintiff and Respondent.

\* \* \* \* \* \*

_____

\*      Pursuant to California Rules of Court, rules 8.1100 and 8.1110, this opinion is certified for publication with the exception of part 1 under the Discussion.

Appellant Savon Gibson challenges his conviction for one count of attempted robbery. We publish the portion of this opinion addressing his claim that insufficient evidence supported the trial court's finding that a prior 2011 assault conviction constituted a strike under the "Three Strikes Law." (Pen. Code, §§ 667, subds. (b)-(i), 1170.12, subds. (a)-(d).)[1] In finding the conviction was a strike, the trial court admitted a certified prison packet (§ 969b) (969b packet) "by reference" only and did not retain it in the court's records in violation of the Penal Code. Appellant was thereafter unable to obtain a copy for his appeal. But the error was harmless because we have reviewed a certified copy of the 969b packet, which demonstrated appellant's prior assault conviction was, in fact, a strike. In the unpublished portion of this opinion, we reject appellant's remaining contentions. We therefore affirm.

## PROCEDURAL BACKGROUND

Appellant was charged with residential burglary (§ 459), attempted carjacking (§§ 215, subd. (a), 664), and attempted robbery (§§ 211, 664). It was also alleged he had one prior serious felony conviction (§ 667, subd. (a)(1)), one strike conviction (§§ 667, subds. (b)-(i), 1170.12, subds. (a)-(d)), and one prior prison term (§ 667.5, subd. (b)). A jury acquitted him of burglary and attempted carjacking, but convicted him of attempted robbery. As discussed more fully below, the trial court held a bench trial and found the prior conviction allegations true. The court sentenced him to seven years eight months, consisting of the low term of 16 months for the attempted robbery, doubled to 32 months based on the prior strike, plus five years pursuant to section 667, subdivision (a)(1).

## STATEMENT OF FACTS

On August 9, 2012, around 5:25 a.m., Dr. Tigran Khachatryan left his apartment and entered his building's parking garage, intending to drive to work. He had locked his car the previous night, but left the sunroof tilted up. As he opened the rear passenger door, he noticed his white coat inside was crumpled, with the pockets emptied. He looked up and saw appellant sitting in the driver's seat, staring at him. After a few

---

[1]  Undesignated statutory citations are to the Penal Code unless otherwise noted.

2

seconds, appellant said, "Give me your keys or your life." As Khachatryan patted his pants for his keys, appellant said, "Give me your wallet too." Khachatryan noticed his wallet had been left on the center console and had already been rifled. He directed appellant's attention to the wallet, and appellant picked it up.

While fumbling for his keys, Khachatryan attempted to distract appellant by telling him he would not be able to drive out of the garage without the gate remote control on the sun visor. When appellant turned to look for the control, Khachatryan slammed the door, ran upstairs to his apartment, and called 911.

When officers arrived, appellant was no longer in the car or the parking garage. Khachatryan described what happened, including appellant's demand for his keys and wallet. Upon inspecting the car, Khachatryan noticed the sunroof had been lifted upward and was not in working condition. Inside the car, the ignition had new scratch marks and no longer worked to start the engine. Someone also had rummaged through the center console and glove compartment.

A fingerprint recovered from the vehicle was matched to appellant. Officer Adrian Maxwell created a photographic lineup with appellant's photograph in the No. 5 position. When shown the photographs, however, Khachatryan chose No. 4. But Khachatryan identified appellant at the preliminary hearing when he was able to see him from the side, which was the way he had seen him in the car.

Appellant testified in his defense, stating he was bipolar and schizophrenic. Following an attempted suicide at 12 years old, he began taking lithium to keep himself stable, although in 2012, he was not taking it. He had difficulty remembering much of the month in which the incident occurred. He had been using methamphetamine and marijuana in the week leading up to the incident and was "on a crash." He had been high on methamphetamine and marijuana the night he entered Khachatryan's car. He could not recall how he got inside the parking garage or the car. Nor could he remember making the threatening demand for Khachatryan's keys and wallet. He intended merely to find a place to sleep, not to steal anything.

3

He fell asleep until a beep woke him. He heard a door open, turned, and saw a man at the rear passenger door. He thought the man could have been a doctor. He recalled asking for money, but believed he would not have made a threatening demand for his keys and wallet, which would have been out of his character. He denied tampering with the ignition and glove compartment. After he saw Khachatryan, he got out of the car, ran across the street, and jumped into a dumpster to sleep.

Officer Maxwell interviewed appellant six months after the incident. At that time, appellant was back on his medication and stable. During the interview, appellant prepared a written statement in which he admitted breaking into Khachatryan's car because he was homeless and looking for a place to sleep. He also admitted asking Khachatryan for money.

Appellant acknowledged pleading guilty in 2010 for a felony assault charge.

## DISCUSSION

### 1. Jury Instructions on Voluntary Intoxication and Mental Impairment*

At the close of evidence, the court held a conference during which the court and the parties agreed on a set of jury instructions. The next morning, defense counsel informed the court she had forgotten to request voluntary intoxication and mental impairment instructions, CALCRIM Nos. 3426 and 3428, and asked the court to give them. The court denied the request, stating: "I have read both instructions to both counsel. We had a fairly lengthy jury conference. Both counsel said the instructions that the court plans to read would be the instructions. The court does not find to give either CALCRIM 3426 or 3428, so the court will not be giving either one of those two instructions." The court gave no other substantive reason for refusing to give the instructions.

On appeal, appellant claims the court's refusal to give voluntary intoxication and mental impairment instructions was error and violated his constitutional rights to due process and a jury trial. We disagree.

---

\* See footnote, *ante*, page 1.

4

*A. Voluntary Intoxication*

According to section 29.4, "Evidence of voluntary intoxication shall not be admitted to negate the capacity to form any mental states for the crimes charged"; instead, "[e]vidence of voluntary intoxication is admissible solely on the issue of whether or not the defendant actually formed a required specific intent." (§ 29.4, subds. (a), (b).) CALCRIM No. 3426 conveys the substance of section 29.4.

A defendant is entitled to a voluntary intoxication instruction "'only when [the record contains] substantial evidence of the defendant's voluntary intoxication and the intoxication affected the defendant's "actual formation of specific intent."'" (*People v. Verdugo* (2010) 50 Cal.4th 263, 295.) To constitute substantial evidence, the evidence of intoxication and its effect on the defendant must be more than "minimal." (*People v. Roldan* (2005) 35 Cal.4th 646, 715, disapproved of on other grounds by *People v. Doolin* (2009) 45 Cal.4th 390, 421, fn. 22.) Thus, "an intoxication instruction is not required when the evidence shows that a defendant ingested drugs or was drinking, unless the evidence *also* shows he became intoxicated to the point he failed to form the requisite intent or attain the requisite mental state." (*People v. Ivans* (1992) 2 Cal.App.4th 1654, 1661; see *Roldan, supra*, at p. 716 [evidence establishing defendant was "a habitual user of marijuana" who told a witness he felt "'a little woozy'" did not support intoxication instruction].)

Here, insufficient evidence justified giving a voluntary intoxication instruction. While appellant testified he had been using methamphetamine and marijuana in the week leading up to the incident, was "on a crash," and had been high on the night he entered Khachatryan's car, he did not specify what quantity of drugs he had ingested or whether he was still under their influence the *morning after* he claimed to have ingested them. He also testified he could not recall how he got inside the parking garage or the car and did not remember demanding Khachatryan's keys and wallet, but his memory problems could have been caused by the passage of time between the incident and trial nearly two years later, rather than using drugs that night. His claimed lack of memory was also inconsistent with his ability to recall other facts at trial, such as asking Khachatryan for

money and thinking Khachatryan might have been a doctor. The physical evidence also belied his claim he was too intoxicated to form the requisite intent: the moon roof was broken; the car's ignition was damaged; and the glove compartment, Khachatryan's lab coat, and Khachatryan's wallet had all been rifled. On this record, the trial court was not required to instruct on voluntary intoxication.

*B. Mental Impairment*

Like voluntary intoxication, "[e]vidence of mental disease, mental defect, or disorder shall not be admitted to show or negate the capacity to form any mental state," and it is only admissible "on the issue of whether or not the accused actually formed a required specific intent." (§ 28, subd. (a).) CALCRIM No. 3428 conveys the substance of section 28. A trial court must give a mental impairment instruction "only if substantial evidence supports the defense theory that defendant's mental disease or disorder affected the formation of the relevant intent or mental state." (*People v. Larsen* (2012) 205 Cal.App.4th 810, 824.) "[E]xpert medical opinion testimony is necessary to establish that a defendant suffered from a mental disease, mental defect, or mental disorder within the meaning of CALCRIM No. 3428, because jurors cannot make such a determination from common experience." (*Ibid.*; see *People v. Moore* (2002) 96 Cal.App.4th 1105, 1117.)

Here, appellant offered no expert testimony that he suffered from a mental disease or defect that affected the formation of his intent to rob Khachatryan. He merely testified he was bipolar and schizophrenic, had attempted to commit suicide at the age of 12, and had not been taking lithium at the time of the attempted robbery. He offered no testimony or other evidence as to how his condition affected his intent at the time of the alleged crime. Again, as noted above, the physical evidence inside the car suggested he had his full mental faculties when he entered the car and later when he confronted Khachatryan. Thus, the trial court properly refused to give the instruction.

*2. **Sufficiency of Evidence of Prior Strike Conviction***

Appellant was charged with having a 2011 assault conviction pursuant to section 245, subdivision (a)(1) that qualified as a strike under the Three Strikes Law. After the jury found him guilty of attempted robbery, the court held a bench trial on his prior

6

conviction. A paralegal from the district attorney's office testified regarding his acquisition of a certified 969b packet corresponding to appellant, identified as People's exhibit 1. He explained the packet contained a certification page, a prison chronology, the abstract of judgment, a fingerprint card, and a booking photograph. A fingerprint identification expert testified that the fingerprints in the 969b packet and the fingerprints he took from appellant matched. The fingerprint card he created was identified as People's exhibit 2. The prosecutor moved People's exhibits 1 and 2 into evidence, which the court "received by reference" and returned to the prosecutor. The court found the prior conviction true and denied appellant's request to strike it. Appellant's resulting sentence was a low term of 16 months, doubled to 32 months because of the strike, plus five years pursuant to section 667, subdivision (a)(1) for his prior prison term.

On appeal, appellant claims the trial court erred in admitting the People's exhibits 1 and 2 "by reference" only and by not retaining those exhibits. Without the 969b packet, he argues insufficient evidence supported the court's strike finding. He is correct that in the absence of the 969b packet, the record does not demonstrate his prior assault conviction was a strike. When he suffered the prior assault conviction in 2011, a violation of section 245, subdivision (a)(1) constituted a strike only if appellant used a deadly weapon (§ 1192.7, subd. (c)(31)) or personally inflicted great bodily injury (§ 1192.7, subd. (c)(8)); a conviction under section 245, subdivision (a)(1) did *not* count as a strike if it merely involved the use of force likely to produce great bodily injury. (Stats. 2011, ch. 183, § 1; see *People v. Delgado* (2008) 43 Cal.4th 1059, 1065 (*Delgado*) [discussing prior version of statute].) Appellant correctly points out that, aside from the 969b packet, nothing in the present record reflects the nature of the prior assault conviction.

Appellant is also correct that the trial court erred in failing to retain People's exhibits 1 and 2 after admitting them into evidence. The Penal Code contains a comprehensive chapter governing the disposition of exhibits in criminal cases, including the mandate that the clerk of the superior court *retain* all exhibits until an action is final: "All exhibits which have been introduced or filed in any criminal action or proceeding

7

shall be retained by the clerk of the court who shall establish a procedure to account for the exhibits properly, subject to Sections 1417.2 and 1417.3 until final determination of the action or proceedings and the exhibits shall thereafter be distributed or disposed of as provided in this chapter." (§ 1417.) When the action involves an appeal, as here, it is considered final 30 days after the clerk of the superior court receives the remittitur affirming the judgment. (§ 1417.1.) Until that date, exhibits may not be ordered to be destroyed. (§ 1417.1.) Exhibits may be released to the parties before the case is final upon stipulation or motion, so long as no prejudice would result and a "full and complete photographic record" is made. (§ 1417.2.) Likewise, if the clerk of court determines an exhibit poses a security, storage, or safety problem, the court may order it or a portion of it released to the offering party before the case is final, so long as a "full and complete photographic record" is substituted. (§ 1417.3, subd. (a).)

These provisions reflect the Legislature's judgment that the superior court clerk—not the parties—should be the repositories and managers of exhibits (or copies thereof) offered in criminal cases except in certain circumstances, none of which apply here. There are practical reasons for this, aptly demonstrated by appellant's inability in this case to easily obtain the exhibits necessary to fully prosecute his appeal. There are also policy and even due process considerations, most notably to avoid placing the safe-keeping of criminal trial exhibits in the hands of one of the adversaries, which might expose them to accusations of wrongdoing or negligence if those exhibits become lost or compromised. Of course, we recognize the potential cost and space savings to trial courts by shifting the burden to district attorneys to retain and store exhibits. But section 1417 reflects a legislative judgment neither we nor the superior courts are equipped or empowered to second-guess. Appellant claims this "unlawful evidentiary procedure . . . has proliferated of late in Los Angeles County Superior Court criminal courtrooms." We have no way to verify that, so we simply remind the superior courts they are governed by the procedures in section 1417 et seq., and should handle and retain exhibits (or copies thereof) in criminal cases accordingly. If the Legislature wishes to change these procedures, it is entitled to do so.

8

We will not reverse, however, because the trial court's violation of section 1417 was harmless.  (*People v. Coley* (1997) 52 Cal.App.4th 964, 970 (*Coley*) ["While the defendant is entitled to a record adequate to afford a meaningful appeal, he bears the burden to show the deficiencies in the record are prejudicial."].)  We directed the trial court to obtain the 969b packet from the district attorney, certify its accuracy, and submit it to us, which the trial court did.  Our review of the 969b packet reveals that appellant's prior conviction did indeed constitute a strike.  The abstract of judgment described appellant's conviction as "ASSAULT WITH DEA" under section 245, subdivision (a)(1).  The fingerprint form described the conviction as "FORCE/ADW NOT FIREARM:GBI."  And appellant received an additional year under section 12022, subdivision (b)(1), which enhanced his sentence upon a finding that he personally used a deadly or dangerous weapon in the assault.  That demonstrated beyond a reasonable doubt the prior conviction constituted a strike (*Delgado, supra*, 43 Cal.4th at p. 1065), so appellant suffered no prejudice from the court's failure to retain the 969b packet in its records.[2]

## DISPOSITION

The judgment is affirmed.

FLIER, J.

WE CONCUR:

BIGELOW, P. J.

RUBIN, J.

---

[2]     Because we have obtained and reviewed the 969b packet, we need not address respondent's argument that appellant should have moved to obtain or reconstruct the 969b packet for purposes of appeal.  (See, e.g., *Coley, supra*, 52 Cal.App.4th at p. 972.)