Filed 7/19/21  P. v. Mendoza CA5

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>FRANCISCO CARILLO MENDOZA,<br><br>Defendant and Appellant. | F079464<br><br>(Kern Super. Ct. No. DF014039A)<br><br><br>**OPINION** |

-ooOoo-

APPEAL from a judgment of the Superior Court of Kern County.  Charles R. Brehmer, Judge.

Richard Jay Moller, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra and Rob Bonta, Attorneys General, Lance E. Winters, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Louis M. Vasquez, Jennifer Oleska, and Cavan M. Cox II, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

In this appeal, defendant Francisco Carillo Mendoza argues the court prejudicially erred in denying his requests to reduce his "wobbler" assault charge/conviction to a misdemeanor. Defendant further argues the court prejudicially erred in reciting the pledge of allegiance before voir dire and inviting potential jurors to join in the pledge "if" they "would like." We reject both claims and affirm.

## BACKGROUND

In an information filed March 4, 2019, the Kern County District Attorney charged defendant with assault by means of force likely to produce great bodily injury (count 1; Pen. Code, § 245, subd.(a)(4)),[1] misdemeanor violation of a court order (count 2; § 273.6, subd. (a)), and misdemeanor resisting, delaying or obstructing a peace officer (count 3; § 148, subd. (a)(1).) The information also alleged a prior prison term enhancement. (§ 667.5, subd. (b).)

Both before and after trial, defendant moved for an order reducing count 1 from a felony to a misdemeanor. The trial court denied both motions.

A jury convicted defendant on all three counts, and the court found the prior prison allegation true.[2] Defendant was sentenced to 3 years in prison on count 1; a concurrent term of 364 days in jail on count 2; and another concurrent term of 364 days in jail on count 3.

## FACTS

*Stipulated Facts*

Defendant was previously convicted of simple battery against his mother, Margarita. As a condition of his resulting probation, a court issued a "stay-away order" under section 136.2. The order prohibited defendant from having personal, electronic,

---

[1] All further statutory references are to the Penal Code unless otherwise stated.

[2] The court subsequently struck the prior prison term enhancement "for sentencing and custody credit purposes."

2.

telephonic, or written contact with Margarita.  The order also prohibited defendant from coming within 100 yards of Margarita and her home in Delano.  The court issued, read, and personally served defendant with the order on June 30, 2015.

Defendant was previously convicted of violating the stay-away order on November 16.[3]

Margarita testified that on May 20, 2018, she was in the kitchen while defendant was lying on the sofa.  All of a sudden, defendant started yelling.  Margarita told him to stop yelling because his father, Francisco,[4] was not feeling well.  However, defendant got louder and continued yelling.  Francisco came out of the bedroom and told him to quiet down and to stop yelling.  Eventually, Francisco said he would call the police if defendant did not quiet down.  Francisco opened the door and stood by it.  Defendant got up from the sofa and went behind Francisco.  Defendant took a step forward and "with his body he pushed [Francisco] outside."  Francisco fell.  Margarita was unable to get him up.[5]

Defendant went into his bedroom and then came outside.  As he passed Margarita and Francisco, he said "bad words."  Defendant tried to kick Francisco, but it turned out that he was not close enough to truly connect with his kick.  However, the kick was close enough to cause Francisco's hair to move.

Francisco called 911 and told the dispatcher his son "threw me out here with a kick …."  During the call, Francisco said defendant "kicked me" and then said, "He kicked me again."  Then, Francisco said, "He just left."

---

[3] The stipulation as read by the court did not provide the year of the previous conviction.

[4] Defendant and his father are both named Francisco Mendoza.  We will refer to defendant as "defendant" and his father as "Francisco."

[5] Francisco generally testified to the same version of events.

3.

Officer Ramirez testified that on May 20, 2018, she was traveling in a patrol vehicle while wearing her police officer's uniform. Ramirez received a call regarding an assault involving a father and a son. Ramirez was given a description of a possible subject, including clothing. While patrolling the 700 block of Clinton Street, Ramirez saw defendant, who matched the description she was given.

Officer Ramirez activated her vehicle's lights and siren. Defendant turned around, had a startled look, and turned back around. Ramirez parked her car and opened her door. Defendant ran away. Ramirez was unable to contact defendant for the rest of that day, even after establishing a perimeter.

Corporal McDermand testified that he was dispatched to an address on Clinton Street due to an altercation between Francisco and his son. Francisco told McDermand that defendant hit and stomped his head. McDermand looked for injuries on Francisco's head but found none. Francisco complained of a headache but declined medical attention.[6]

Corporal McDermand also spoke with Margarita. Margarita did not mention defendant trying to kick Francisco.

## DISCUSSION

### I. The Trial Court did not Abuse its Discretion in Denying Defendant's Request to Reduce Felony Assault to a Misdemeanor

Defendant argues the trial court abused its discretion by denying his motion to reduce felony assault to a misdemeanor under section 17, subdivision (b).

#### A. *Background*

The prosecutor opposed defendant's request to reduce the felony assault charge. She observed that defendant "was on at least five probations" when he committed the present offense and had a history involving at least three parole violations. She further

---

[6] At trial, Francisco testified that he did not have a headache.

noted that defendant "took advantage of a vulnerable victim, his sixty-four-year-old father," knocking him to the ground such that he had difficulty getting up for several minutes. Defendant also tried to kick his father in the head.

In contrast, defendant argued that "the simple fact[s] of this case" do not "warrant a felony conviction."

The court denied the motion, concluding "the jury's verdict was consistent with what the evidence was that was presented at the jury trial …."

**B.** *Law*

Section 17 affords trial courts broad discretion to treat "wobbler" offenses as misdemeanors. (*People v. Superior Court* (*Alvarez*) (1997) 14 Cal.4th 968, 976–978 (*Alvarez*).) Among the factors that guide the court's discretion are " 'the nature and circumstances of the offense, the defendant's appreciation of and attitude toward the offense, or his traits of character as evidenced by his behavior and demeanor at the trial.' [Citations.]" (*Id*. at p. 978.) Courts must also consider "the defendant's criminal past and public safety …." (*Id.* at pp. 981–982.) "When appropriate, judges should also consider the general objectives of sentencing …." (*Id.* at p. 978, fn. omitted.) The trial court has the discretion to choose what weight to place on each factor. (*Id.* at p. 979.)

On review of a wobbler determination, we apply an "extremely deferential and restrained standard …." (*Alvarez, supra*, 14 Cal.4th at p. 981.) The appellant must " 'clearly show that the sentencing decision was irrational or arbitrary.' " (*Id.* at p. 977.) Absent such a showing, we presume the trial court acted to achieve legitimate sentencing objectives and affirm the judgment. (*Id.* at pp. 977–978.) " '[A] decision will not be reversed merely because reasonable people might disagree. "An appellate tribunal is neither authorized nor warranted in substituting its judgment for the judgment of the trial judge." [Citations.]' [Citation.]" (*Id.* at p. 978.)

### C.    *Analysis*

Applying the deferential standard described above, we conclude the trial court's decision was not irrational or arbitrary.  Defendant knocked down his 64-year-old father – who was not feeling well – causing him to fall *outside* onto the ground.  Photographic exhibits show that there is hardscape on the ground immediately outside the door.  The victim's wife was unable to get him up.  Defendant then tried to kick his father.  While " 'reasonable people might disagree' " (*Alvarez*, *supra*, 14 Cal.4th at p. 978) as to whether this conduct warrants felony treatment, we cannot say the trial court's conclusion was irrational or arbitrary.

Moreover, the circumstances of the offense are not the only factor the court was permitted to consider.  Courts must also consider "the defendant's criminal past and public safety …." (*Alvarez*, *supra*, 14 Cal.4th at pp. 981–982.)  Defendant acknowledges he was on probation, had a lengthy history of committing misdemeanor crimes, served a prison term in 2007 for a domestic violence conviction and, while in prison, was convicted of possessing an inmate-manufactured weapon.  However, he argues his record was not "so egregious" as to justify the court's denial of his motion.  Essentially, defendant is urging to draw an inference about the egregiousness of his criminal history contrary to the judgment.  We cannot do so on deferential review.  Instead, we conclude that it would not be irrational or arbitrary to deny the wobbler request based on defendant's substantial criminal history.

## II.    Defendant Has Not Established That the Court Prejudicially Erred in Reciting the Pledge of Allegiance and Noting that Potential Jurors Were "Welcome" to Join "if" They "Would Like"

Defendant filed a motion in limine requesting that the court not recite the pledge of allegiance even if the jurors and defendants' participation was optional.  He argued that the setting rendered even an ostensibly voluntary pledge coercive and unconstitutional.  Defendant called the court's practice of reciting the pledge, "offensive,

6.

unpatriotic, and in poor taste." Defendant doubled down on his view that the "Court's recitation of the pledge of allegiance is downright unpatriotic." The court denied defendant's motion.

When the prospective jurors were brought into the courtroom before trial, the court said:

> "Good afternoon, everybody. My name is Charles Brehmer. I'm the judge that is presiding over this criminal case. This case is entitled the People of the State of California versus Francisco Mendoza.
>
> "In a minute, I'll have you stand up and take the oath. After you take the oath, if you would like to remain standing and join me in the Pledge of Allegiance, you're welcome to do so.
>
> "Were you called in this afternoon or all day? Who was there all day? You're the hardy individuals that made it to the afternoon. Okay, all right. Let's have you stand up and raise your right hand, please."

The clerk then administered the oath to the prospective jurors.

Immediately thereafter, the court said: "If you'd like to remain standing and join me in the Pledge, you're welcome to do so." The court then stated the pledge of allegiance on the record. On appeal, defendant acknowledges he recited the pledge, saying the circumstances "forced" him to comply. Thereafter, the court proceeded with voir dire.

A.    *Analysis*

Defendant objects "to the coercion that he and prospective jurors would feel to comply with the alleged voluntary recital of the Pledge of Allegiance in the courtroom."[7] Defendant says he was coerced into reciting the pledge "lest he risk the censure of some of the more 'patriotic' or less tolerant jurors …." Defendant argues that his "joining the

---

[7] Defendant has no standing to seek relief based on any alleged violation of the prospective jurors' right to be free of coercion.

court in reciting the Pledge of Allegiance was coerced and not voluntary," and therefore violated his right to a fair trial.[8]

Even assuming the court's optional invitation for the prospective jury pool to recite the pledge was rendered "coercive" by the context in which it was given, defendant has failed to establish that his verdict was prejudiced thereby.[9]  If defendant actually recited the pledge (even if he did so as a result of coercion), there would be no reason for a "patriotic or less tolerant juror[]" to draw a negative inference about him.[10]Defendant also says that giving potential jurors the option to recite the pledge could give the prosecution extra information on which to base peremptory challenges.  Specifically, a prosecutor may choose "to exercise a peremptory challenge to any juror who was brave enough to sit down and not participate in this ersatz exercise in patriotism."  But defendant has not established that any potential juror in this case actually declined to participate in the pledge.  This is a necessary premise to defendant's claim of actual

---

[8] Defense counsel raised uncertainty about this contention at oral argument, observing that the record is not clear as to whether or not defendant actually recited the Pledge of Allegiance at all.  However, it is defendant's burden as appellant "to show error *and resulting prejudice.*" (*People v. Coley* (1997) 52 Cal.App.4th 964, 972, italics added.)  For the reasons explained herein, the alleged error is not prejudicial if defendant indeed recited the pledge.  Thus, a necessary premise to defendant's claim of prejudice is that he did *not* recite the pledge, and the jurors drew a negative inference therefrom.  Defendant cites to nothing in the record to support that necessary premise.  In other words, ambiguity in the record does not aid defendant.

[9] Defendant states in conclusory fashion that the error was structural and cites to two *Batson/Wheeler* cases to support the claim.  Such citations are inapposite.

To the extent defendant argues that the court's recitation of the pledge after expressly noting that participation is voluntary " 'damage[ed] the integrity of the tribunal,' " we simply disagree.

[10] Defendant says the coercive recitation of the pledge violated his right to a fair trial but supports that claim with three citations to school prayer/meditation cases.  Here, however, the question is whether any alleged violation of defendant's rights prejudiced *the criminal verdict/trial.*  Even if, arguendo, the court unconstitutionally compelled defendant's speech in a manner analogous to coercive school prayer, it has not been shown that any such violation was prejudicial to defendant's criminal verdict.

prejudice, because if all potential jurors participated in the pledge, the prosecutor would have no extra information singling out any potential jurors for peremptory challenge. In other words, if all potential jurors participated in the pledge, there was no prejudice to the voir dire process. Defendant has failed to carry his burden of establishing prejudicial error.

## DISPOSITION

The judgment is affirmed.

POOCHIGIAN, J.

WE CONCUR:

LEVY, Acting P.J.

SNAUFFER, J.