Filed 11/12/25  P. v. Bradford CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| THE PEOPLE, | C101209 |
| Plaintiff and Respondent, | (Super. Ct. No. 16FE019266) |
| v. | |
| SALVADOR BRADFORD, | |
| Defendant and Appellant. | |

A jury found defendant Salvador Bradford guilty of attempted murder and being a convicted felon in unlawful possession of a firearm.  The jury further found true firearm and great bodily injury enhancements associated with the attempted murder count. Bradford appeals, arguing the judgment should be reversed because the trial court erred in sustaining the prosecution's objection to the defense's peremptory challenge of a juror

1

under Code of Civil Procedure[1] section 231.7.  In the alternative, Bradford asserts the evidence was insufficient to establish the shooting was not committed in lawful self-defense (requiring reversal of the attempted murder conviction) or in imperfect self-defense (requiring a reduction of the offense to attempted voluntary manslaughter). Finding no merit in these contentions, we affirm the judgment of conviction.

Bradford also asserts and the People concede that remand for resentencing is required because (1) the trial court erred by failing to impose and then stay execution of the sentence on the great bodily injury enhancement under Penal Code section 12022.7, subdivision (a); and (2) the trial court erred in failing to resentence Bradford to a single aggregate term of imprisonment for this case and another case for which he is serving a term of 24 years.  We accept the People's concession and remand the matter for resentencing.

BACKGROUND

We set forth facts pertaining to the underlying offenses here for context. Additional facts pertinent to the analysis of Bradford's arguments are included in the Discussion section, as necessary.

P.A., the victim, was shot multiple times in his neighbor's apartment.  He provided three versions of the events surrounding the shooting.  Because Bradford's identity as the shooter is not challenged on appeal, all versions set forth below identify him as such.

In the first version of events, during an interview at the hospital shortly after the shooting, P.A. told an officer that Bradford and his girlfriend were at P.A.'s neighbor's apartment when P.A. arrived.  While P.A. was playing video games, Bradford left the apartment for some reason and Bradford's girlfriend followed.  Bradford was wearing a white T-shirt when he left and was wearing a black puffy jacket when he returned.  When

---

[1]  Undesignated statutory references are to the Code of Civil Procedure.

Bradford returned, he had a handgun, yelled something that P.A. did not understand, and fired five or six rounds at P.A. Bradford then fled out the front door.

In the second version of events, during an interview with a different officer later the same day at the hospital, P.A. said Bradford left the neighbor's apartment while P.A. was playing video games. Bradford later returned and shot him; P.A. "didn't see it coming at all." P.A. told the officer that Bradford shot him once and after he fell to the floor, Bradford stood over him, pointed the gun at him, said, "die motherfucker," or something to that effect, and then fired two or three more rounds at him.

In the third version of events, during his testimony given at trial, P.A. testified he went to his neighbor's house to play video games. After his neighbor left the living room to check on his daughter in another room, P.A. heard Bradford step over the threshold and say, "Bitch ass Nigga," which P.A. took as a warning. P.A.'s head was turned away from the door. P.A. "started to turn" toward the door and "popped [his] knife out of [his] pocket because [he] . . . was about to take care of business." He explained it happened in one motion—he stood up, "flicked" his knife, and turned to face in the direction of Bradford's voice. P.A. heard gunshots and fell backward after being shot three or four times. P.A. "didn't see it coming." Bradford ran out of the house but returned and stood over P.A., who could not get up or defend himself due to his injuries. Bradford then shot P.A. again but P.A. was unsure how many rounds were fired.

The jury found Bradford guilty of attempted murder and found true that Bradford personally used and intentionally discharged a firearm proximately causing great bodily injury and personally inflicted great bodily injury in committing that offense. Bradford and the prosecution stipulated that he had previously been convicted of a felony offense in 2009, and the jury found Bradford guilty of being a felon in unlawful possession of a firearm.

The trial court sentenced Bradford to a determinate term of 27 years, consisting of 18 years for the attempted murder count (double the upper term of nine years under the

3

three strikes law), four years for the unlawful possession count (double the middle term of two years under the three strikes law), and five years for the prior serious felony enhancement under Penal Code section 667, subdivision (a). The court also imposed a consecutive term of 25 years to life for the firearm enhancement. Bradford appeals.

DISCUSSION

I

*The Attempted Murder Conviction Is Supported By Substantial Evidence*

Bradford argues there was insufficient evidence to support the attempted murder conviction because the "uncontradicted trial evidence" that P.A. "reacted aggressively to words he heard" by making an "overtly hostile, armed advance," i.e., by showing a knife, established "the factual predicate for self-defense." He asserts the prosecution relied on P.A.'s hospital statements, which do not constitute substantial evidence because "the underlying statements were demonstrably unreliable, expressly recanted at trial, wholly uncorroborated by any other credible witness or evidence, and directly contradicted by other eyewitness accounts." In the alternative, Bradford argues his conviction should be reduced to attempted voluntary manslaughter because the prosecution failed to present substantial evidence to disprove that the shooting was committed in imperfect self-defense beyond a reasonable doubt. We find no merit in these arguments.

An attempted homicide "is considered justified as self-defense where the defendant actually and reasonably believed the use of deadly force was necessary to defend himself from imminent threat of death or great bodily injury. Under such circumstances, the killing is not a crime. [Citations.] Where the defendant kills while actually but *unreasonably* believing the use of deadly force was necessary, defendant is considered to have acted in imperfect self-defense. Imperfect self-defense is not a complete defense to a killing, but negates the malice element and reduces the offense to voluntary manslaughter. [Citations.] 'The subjective elements of self-defense and imperfect self-defense are identical. Under each theory, the [defendant] must actually

4

believe in the need to defend . . . against imminent peril to life or great bodily injury.' " (*People v. Sotelo-Urena* (2016) 4 Cal.App.5th 732, 744.) "[T]he amount of force the defendant uses must be no more than reasonably necessary to fend off the perceived threat." (*People v. Waxlax* (2021) 72 Cal.App.5th 579, 592.) Further, when the perceived threat "has passed and when the attacker has withdrawn from the combat, the defendant is not justified in pursuing him further and killing him, because the danger is not then imminent, and there is no apparent necessity to kill to prevent the death of or serious bodily injury to the defendant." (*People v. Keys* (1944) 62 Cal.App.2d 903, 916.)

At the outset, we need not and do not address Bradford's assertion that P.A.'s hospital statements cannot constitute substantial evidence because they were unreliable, uncorroborated, and contradicted by other evidence. We do not resolve credibility issues or evidentiary conflicts on appeal because those questions are within the exclusive province of the jury. (*People v. Penunuri* (2018) 5 Cal.5th 126, 142.) Further, we conclude that under any of the three versions of the events provided by P.A., there is substantial evidence in the record to support the finding that neither self-defense nor imperfect self-defense applied.

Under the first and second versions of the events relayed to police officers on the day of the shooting, P.A. said he was sitting on the couch when Bradford entered the neighbor's apartment and shot him. Under those versions, P.A. neither advanced toward nor threatened Bradford and there was accordingly no justification for use of *any* force, much less the use of lethal force.

Under the third version of the events testified to at trial—which is the version upon which Bradford relies—P.A. testified that, after he turned toward the location from where the racial slur was uttered, he "popped or "flicked" his knife, and Bradford shot him three or four times before leaving the neighbor's apartment. The gunshots resulted in P.A. falling backward and his injuries left him unable to get up or defend himself.

5

Bradford then reentered the apartment, stood over P.A., and shot him again.[2]  When Bradford shot P.A. while he was lying helpless on the ground with several injuries, any purported threat of imminent death or great bodily injury had been negated and no use of any force was justified or appropriate.  As the trial court appropriately instructed the jury, "[t]he right to use force in self-defense continues only as long as the danger exists or reasonably appears to exist.  When the attacker withdraws or no longer appears capable of inflicting any injury, then the right to use force ends."  (CALCRIM No. 3474; *People v. Keys*, *supra*, 62 Cal.App.2d at p. 916 [defendant not justified in pursuing attacker if the perceived threat and danger has passed, and attacker has withdrawn from combat].)  Thus, even assuming that Bradford was justified in exerting force against P.A. when P.A. held the knife (which we do not decide), substantial evidence supports the jury's finding that self-defense and imperfect self-defense did not apply to Bradford's use of lethal force when he attempted to murder P.A. as he laid on the ground.  We accordingly affirm the attempted murder conviction.

## II

### *There is No Reversible Violation of Section 231.7*

Bradford argues the trial court erred by allowing Juror No. 24, a Caucasian female, to be seated on the jury after it sustained the prosecution's section 231.7 objection to the defense's peremptory challenge.  At bottom, Bradford argues his counsel gave plausible, facially neutral, and case-specific justifications for his peremptory challenge of Juror No. 24 based on her "close friendships with law enforcement officers" and her "prior testimony as a witness in a criminal case."  The People disagree, asserting the trial court

---

[2]  Bradford appears to mistakenly believe that only the second version of events, given to the police officer at the hospital, included him reentering the apartment and shooting P.A. as he lay helpless on the floor, when in fact that detail also appears in P.A.'s trial testimony.

did not err in finding that the peremptory challenge was impermissibly based on race and gender. We conclude Bradford has failed to demonstrate reversible error.

A.    *Additional Factual Background*

During voir dire of Juror No. 24, defense counsel asked whether she had family members in law enforcement; she responded that she had good friends in law enforcement in Reno, but she did not see them much anymore. Defense counsel asked whether the juror thought her relationship with her friends "could influence" her on the jury. The juror responded, "No." Defense counsel then asked the juror about her prior experience as a witness in a criminal case. Counsel asked whether either the prosecution or defense counsel in that case made her uncomfortable as a witness. The juror responded, "No." Finally, counsel asked the juror whether, if he were "confrontational with a witness," she would "use that against Mr. Bradford." The juror again responded, "No."

After the juror was called to be seated on the jury, defense counsel exercised a peremptory challenge against her. Defense counsel provided two reasons for seeking to excuse the juror. First, defense counsel said the juror had significant law enforcement ties in Reno. Defense counsel explained he was seeking to excuse the juror on that basis for the same reasons articulated in his challenges to other jurors. Second, defense counsel said the juror's prior experience as a witness caused him "a little bit of concern" because witnesses were "now recanting their stories" and he was concerned "she would put herself in their position and call into question their testimony simply because of what she went through when she testified as opposed to anything that she hears during the course of this trial."

The prosecution objected that Juror No. 24 was the fourth Caucasian female to be challenged. The prosecution argued the juror "was clear in saying" she had not seen her friends in "quite some time" because they live in Reno and she "would be fair and objective." The prosecutor said the juror "made no mention of talking to them about the

7

police work or being unduly influenced in any way by their positions, them being friends." As to her prior experience as a witness, the prosecutor argued there was no connection to the case because the juror previously merely testified against a neighbor.

After the matter was submitted, the trial court ruled: "After evaluating the reasons given to justify the peremptory challenge, in light of the totality of the circumstances, I do find that there's a substantial likelihood that an objectively reasonable person would view race and gender identity on this one, particularly as she is the fourth to be challenged, a white female, and the reasons are, in the Court's view, so ephemeral and non-substantive that the challenge is sustained."

B.    *Legal Background*

Both the state and federal Constitutions prohibit the use of peremptory challenges to remove prospective jurors on the basis of group bias, such as race or ethnicity. (*People v. Scott* (2015) 61 Cal.4th 363, 383; *Batson v. Kentucky* (1986) 476 U.S. 79, 89; *People v. Wheeler* (1978) 22 Cal.3d 258, 276-277.) The standard for reviewing a *Batson/Wheeler* motion is well established. The court must follow a three-step process. (*People v. Battle* (2021) 11 Cal.5th 749, 772.) First, the party objecting to the peremptory challenge must make a prima facie case by showing facts sufficient to support an inference of discriminatory purpose. Second, if a prima facie case is made, the burden shifts to the opponent to offer a permissible, nondiscriminatory explanation for the challenge. Third, if a nondiscriminatory explanation is offered, the trial court must determine whether that explanation is credible, or whether the challenge was in fact motivated by impermissible discrimination. (*Ibid.*)

In 2020, the Legislature passed Assembly Bill No. 3070 (2019-2020 Reg. Sess.) (Stats. 2020, ch. 318, §§ 1-3), which enacted section 231.7. The statute codifies the *Batson/Wheeler* principle prohibiting unlawful discrimination in the use of peremptory challenges. For criminal juries selected after January 1, 2022, it provides that a party is prohibited from using a peremptory challenge to remove a juror based on "race, ethnicity,

8

gender, gender identity, sexual orientation, national origin, or religious affiliation, or the perceived membership of the prospective juror in any of those groups." (§ 231.7, subd. (a); *People v. Jaime* (2023) 91 Cal.App.5th 941, 943, fn. 1.)

Section 231.7 changed the rules for evaluating claims of discriminatory use of peremptory challenges. (*People v. Jaime*, *supra*, 91 Cal.App.5th at p. 943.) Before section 231.7, trial courts examined peremptory challenges using the three-step *Batson/Wheeler* framework, which required the party objecting to a peremptory challenge to make a prima facie case of discrimination. Under section 231.7, this is no longer required. (*Jaime*, at p. 943.) Instead, "upon objection," the party exercising the peremptory challenge must state the reasons for exercising the challenge. (*Ibid.*; § 231.7, subds. (b), (c).) The court then evaluates the reasons given "in light of the totality of the circumstances." (§ 231.7, subd. (d)(1).) If the court determines "there is a substantial likelihood that an objectively reasonable person would view race, ethnicity, gender, gender identity, sexual orientation, national origin, or religious affiliation, or perceived membership in any of those groups, as a factor in the use of the peremptory challenge," the objection must be sustained. (*Ibid.*)

In making a determination on the objection, the trial court may consider, among other things, "[t]he number and types of questions posed to the prospective juror," including whether the party exercising the peremptory challenge "failed to question the prospective juror about the concerns later stated by the party as the reason for the peremptory challenge," "engaged in cursory questioning of the challenged potential juror," or "asked different questions of the potential juror against whom the peremptory challenge was used in contrast to questions asked of other jurors from different perceived cognizable groups about the same topic or whether the party phrased those questions differently." (§ 231.7, subd. (d)(3)(C).)

9

We review the trial court's decision to sustain a section 231.7 objection de novo, deferring to the trial court's findings if supported by substantial evidence. (*People v. Hinojos* (2025) 110 Cal.App.5th 524, 541-542.)

C.       *There Is No Evidence of Reversible Error*

Bradford argues his counsel articulated specific, facially neutral, and plausible reasons for challenging Juror No. 24 and the trial court's finding that the reasons were ephemeral and non-substantive lacks substantial evidence. He further asserts "the error requires reversal of the judgment for a violation of state statutory law and the constitutional right to equal protection." We disagree with Bradford on both fronts.

Initially, the trial court did not err in finding that Bradford's reasons for challenging Juror No. 24 were ephemeral and non-substantive. After the juror said she had good friends who worked in law enforcement, the only question Bradford asked was whether the juror believed her friendship with them could influence her on the jury. The juror responded in the negative. Bradford's questioning of Juror No. 24 with regard to her law enforcement ties was cursory at best and did not include questions pertaining to his concerns about her potential bias in favor of law enforcement. (§ 231.7, subd. (d)(3)(C)(i)-(ii).)

The same is true of the juror's experience as a witness at trial. Defense counsel merely asked the juror whether she experienced discomfort during her prior testimony and whether she would have any animus toward Bradford if defense counsel were confrontational with a witness. The juror responded in the negative and no further questions were posed regarding the juror's perception of trial witnesses who recant prior statements—the reason identified by defense counsel as the basis for the challenge. Given the foregoing and that Juror No. 24 was the fourth Caucasian female subject to a peremptory challenge, there is a substantial likelihood that an objectively reasonable person could view race and gender as a factor in the use of the peremptory challenge. (§ 231.7, subd. (d)(1).)

10

In addition, Bradford has failed to establish any prejudice resulting from Juror No. 24 being seated on the jury. (See *People v. Coley* (1997) 52 Cal.App.4th 964, 972 [appellant has the burden of demonstrating both error and resulting prejudice]; see also Cal. Const., art. VI, § 13 ["No judgment shall be set aside, or new trial granted, in any cause, on the ground of misdirection of the jury, or of the improper admission or rejection of evidence, or for any error as to any matter of pleading, or for any error as to any matter of procedure, unless, after an examination of the entire cause, including the evidence, the court shall be of the opinion that the error complained of has resulted in a miscarriage of justice"].)

Although the erroneous *denial* of a section 231.7 objection is reversible per se (§ 231.7, subd. (j) [if "the objection was erroneously denied, that error shall be deemed prejudicial, the judgment shall be reversed, and the case remanded for a new trial"]), the statute is silent on the proper remedy when a section 231.7 objection is improperly *sustained*. Because "[p]eremptory challenges are intended to promote a fair and impartial jury, [and] are not a right of direct constitutional magnitude," improper denial of a peremptory challenge is not structural error and "warrants reversal only if the accused can show the error affected his right to a fair and impartial jury." (*People v. Webster* (1991) 54 Cal.3d 411, 438-439.) This is the same standard that applies when a court erroneously denies a challenge for cause. (*People v. Ramirez* (2022) 13 Cal.5th 997, 1048; *People v. Black* (2014) 58 Cal.4th 912, 916-918, 920-921.)

The two cases cited by Bradford for the proposition that, when an objection was improperly sustained, reversal of the judgment is required, do not support his position. Both cases pertain to the erroneous use of a peremptory challenge to *exclude* a juror on the basis of group bias, such as race or ethnicity. (*People v. Arias* (2024) 101 Cal.App.5th 1163, 1170 [*exclusion* of a juror for impermissible reasons under *Batson*/*Wheeler* constitutes structural error and requires reversal]; *People v. SanMiguel* (2024) 105 Cal.App.5th 880, 889 [when an objection is improperly *denied* and the juror

11

excluded, the error is deemed prejudicial under § 231.7, subd. (j)], review granted Dec. 18, 2024, S287786.)

Bradford has made no attempt to establish prejudice based on the asserted erroneous denial of his peremptory challenge of Juror No. 24. We affirm the attempted murder conviction because Bradford has shown no error, much less prejudicial error.

III

*Remand for Resentencing Is Appropriate*

Bradford argues and the People concede that the matter should be remanded because the trial court erred by failing to (1) impose and then stay execution of the sentence on the great bodily injury enhancement under Penal Code section 12022.7, subdivision (a), and (2) resentence Bradford to a single aggregate term of imprisonment for this case and another case for which he has been serving a sentence of 24 years. We accept the People's concession.

At sentencing, the trial court did not orally pronounce a sentence for the infliction of great bodily injury enhancement. The matter is accordingly remanded for the trial court to impose and stay execution of the three-year sentence on the Penal Code section 12022.7, subdivision (a) enhancement. (*People v. Gonzalez* (2008) 43 Cal.4th 1118, 1127-1130.)

Further, when the trial court imposed the sentence in this case, Bradford was serving a 24-year sentence for a case in another county. The court indicated that the sentence in this case was to run consecutive to the sentence Bradford was already serving. Penal Code section 1170.1, subdivision (a) provides that when a defendant is convicted of multiple crimes in different cases and a consecutive term of imprisonment is imposed, the aggregate term for those cases is the sum of the principal term and subordinate term. California Rules of Court, rule 4.452 sets forth the procedure for imposing consecutive sentencing under Penal Code section 1170.1. Here, the trial court did not impose a single aggregated term. We will therefore remand for the trial court to

12

do so.  During resentencing, the trial court shall also award the appropriate custody credits for the aggregate term.

## DISPOSITION

The judgment of conviction is affirmed.  The matter is remanded for resentencing for the trial court to impose and stay execution of the three-year sentence on the infliction of great bodily injury enhancement and to impose a single aggregate term for this case and the other case for which Bradford is serving a sentence.  During resentencing, the trial court shall award the appropriate custody credits for the aggregate term.  Following resentencing, the clerk of the trial court is directed to prepare an amended abstract of judgment and forward a certified copy to the Department of Corrections and Rehabilitation.


　　　　　　　　　　　　　　　　　／s／
　　　　　　　　　　　　　　　BOULWARE EURIE, J.



We concur:



　　　／s／
DUARTE, Acting P. J.



　　　／s／
FEINBERG, J.


13