Filed 4/9/25  P. v. Johnson CA2/2

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| THE PEOPLE,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>ANTHONY MARCELL JOHNSON,<br><br>Defendant and Appellant. | B325412<br><br>(Los Angeles County Super. Ct. No. NA097716) |

APPEAL from a judgment of the Superior Court of Los Angeles County, Richard M. Goul, Judge.  Affirmed.

Judith Kahn, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, Zee Rodriguez and Charles S. Lee, Deputy Attorneys General, for Plaintiff and Respondent.

Defendant and appellant Anthony Marcell Johnson (defendant) appeals the judgment entered after he was convicted of murder. He contends his matter should be remanded to juvenile court for a retroactive transfer hearing; that the trial court erred in denying his request for appointment of an expert; that counsel provided ineffective assistance of counsel; and if this case is not sent to juvenile court for a retroactive transfer hearing, it should be remanded for resentencing based on changes in law after sentence was imposed. Finding no merit to defendant's contentions, we affirm the judgment.

## BACKGROUND

In 2015, defendant and codefendant Harry Keo were charged with the murder of Prince Mollett (Pen. Code, § 187, subd. (a), count 1). The information alleged that defendant personally used a firearm, personally and intentionally discharged a firearm, and personally and intentionally discharged a firearm proximately causing great bodily injury or death in the commission of the murder within the meaning of Penal Code section 12022.53, subdivisions (b), (c) & (d).[1]

---

[1] The information included a gang enhancement allegation under Penal Code section 186.22, subdivision (b)(1)(C) and another under section 12022.53, subdivision (e)(1) that a principal personally used and intentionally discharged a firearm. As Penal Code section 12022.53, subdivision (e)(1) applies when there is a gang finding and the prosecutor below declined to proceed on that gang allegation, the firearm allegation under that section was dismissed.

Codefendant Keo was charged with three additional offenses, unlawful possession of a firearm and a drug offense. He and defendant were tried separately.

2

At defendant's 2022 trial, the evidence showed defendant and codefendant Keo were gang members. Keo's girlfriend Lanaya B. testified she overheard defendant telling Keo that Mollett, a member of a different gang, had "banged" on defendant at a bus stop. Defendant, Keo and Lanaya then left for a store, with Lanaya driving. En route defendant saw Mollett at a bus stop and identified him as the person who had "banged" on him. He told Lanaya to make a U-turn and pull over. Defendant got out of the car, Keo got out next, and Lanaya saw defendant shoot Mollett with Keo's black-colored Beretta. A bus passenger saw a person at the location holding a black-colored gun when he heard gunshots. Lanaya saw defendant and Keo run back to the car, with Keo limping due to an earlier injury. Later that evening, defendant, Keo, Lanaya and a few friends were at Keo's apartment when Lanaya heard defendant bragging about shooting someone. Defendant said something like, "I got him," "I domed him," and "fuck the bugs," an insult to Mollett's gang.

Defendant was 16 (almost 17) years old at the time of the 2013 murder. Proposition 57, which amended Welfare and Institutions Code section 707,[2] took effect on November 9, 2016, and in December 2016 defendant filed a motion seeking remand to the juvenile court under its provisions. A hearing was held on October 26, 2017, and the juvenile court ruled defendant was not a fit subject to be dealt with under juvenile court law. The matter was returned to criminal court.

Defendant's jury trial was held in criminal court in June 2022. Defendant was convicted of first degree murder with true

---

[2]     All further unattributed code sections are to the Welfare and Institutions Code section unless otherwise stated.

findings of premeditation and personal firearm use under Penal Code section 12022.53, subdivision (d), causing great bodily injury and death to the victim.  At his sentencing hearing on September 22, 2022, defendant submitted a "Youth Offender Mitigation Brief" and brought a motion for transfer to juvenile court under section 707, as amended by Assembly Bill No. 2361 (2021–2022 Reg. Sess.) (Assembly Bill 2361), although the amendment would not take effect until January 1, 2023.  (See Stats. 2022, ch. 330, § 1.)  The trial court denied the motion and allowed defendant to incorporate the mitigation brief into his request to strike the firearm enhancement pursuant to the amendments to Penal Code section 1385 enacted by Senate Bill No. 81 (2021–2022 Reg. Sess.) (Senate Bill 81).  The motion was denied, and defendant was sentenced to a term of 25 years to life in prison for the murder and a concurrent term of 25 years to life for the firearm enhancement.

Defendant filed a timely notice of appeal.

## DISCUSSION

### I.    Juvenile transfer

Defendant contends the trial court erred in denying his request for a retroactive transfer hearing.  The denial was based on law that had yet to be in effect, and was thus premature. Defendant contends remand for a new juvenile transfer hearing is now required due to Assembly Bill 2361's amendments to section 707 that became effective January 1, 2023, just over three months after his sentencing.  (See Stats. 2022, ch. 330, § 1.)

At the time of defendant's 2017 juvenile court fitness hearing, Proposition 57 had amended section 707 to eliminate the direct filing of charges against certain classes of minors in

4

criminal court by prosecutors, although they "'can still be tried in criminal court, but only after a juvenile court judge conducts a transfer hearing to consider various factors such as the minor's maturity, degree of criminal sophistication, prior delinquent history, and whether the minor can be rehabilitated. (Welf. & Inst. Code, § 707, subd. (a)(1).)'" (*People v. Superior Court* (*Lara*) (2018) 4 Cal.5th 299, 305–306.) It was the prosecution's burden at the fitness hearing to prove by a preponderance of the evidence the minor should be transferred back to criminal court. The juvenile court was allowed to give enumerated factors the weight it considered appropriate. (See *D.W. v. Superior Court* (2019) 43 Cal.App.5th 109, 116–117.)

Assembly Bill 2361 amended section 707, former subdivision (a)(3) to change the prosecutor's burden from a preponderance of the evidence to require the juvenile court to "find by clear and convincing evidence that the minor is not amenable to rehabilitation while under the jurisdiction of the juvenile court." (Stats. 2022, ch. 330, § 1.) In addition, Assembly Bill 2361 added a requirement the juvenile court's recitation of the basis for its decision in the minutes "shall include the reasons supporting the court's finding that the minor is not amenable to rehabilitation while under the jurisdiction of the juvenile court." (*Ibid.*)

Since the passage of Assembly Bill 2361, section 707 has again been amended by Senate Bill No. 545 (2023–2024 Reg. Sess.) (Senate Bill 545). (See Stats. 2023, ch. 716, § 1.) Effective January 1, 2024, Senate Bill 545 amended section 707, subdivision (a)(3)(A) through (E) to require the court to give weight to the enumerated factors that previously were discretionary, and it added factors that must be given weight

5

when evaluating the degree of criminal sophistication exhibited by a minor.  In addition to the inclusive factors enumerated in subdivision (a)(3)(A) through (E) at the time of defendant's 2017 fitness hearing, Senate Bill 545 now requires weight to be given to "the effect of the minor's family and community environment; the existence of childhood trauma; the minor's involvement in the child welfare or foster care system; and the status of the minor as a victim of human trafficking, sexual abuse, or sexual battery on the minor's criminal sophistication."  (§ 707, subd. (a)(3)(A)(ii).)  Senate Bill 545 also added subdivision (a)(3)(E)(iii): "When evaluating the criterion specified in clause (i) [success of previous attempts by the juvenile court to rehabilitate the minor], the court shall consider evidence offered that indicates that the person against whom the minor is accused of committing an offense trafficked, sexually abused, or sexually battered the minor."

Although the briefs in this case were filed after the January 1, 2024 Senate Bill 545 effective date, the parties did not discuss these changes.  After we invited the parties to submit supplemental briefing regarding the effect, if any, of Senate Bill 545 on the issues in this appeal, both parties filed supplemental letter briefs and motions to augment the record, which we granted.

The People agree with defendant the amendments to section 707 are retroactive in cases that were not yet final, and defendant's case is not final.  (See *In re J.M.* (2024) 103 Cal.App.5th 745*,* 753[3] [applying Sen. Bill 545 and Assem. Bill

---

[3]    The Supreme Court granted review in *In re J.M.*, *supra*, 103 Cal.App.5th 745, deferring further action pending consideration and disposition of a related issue in *People v. Lopez*

6

2361 retroactively]; *In re Miguel R.* (2024) 100 Cal.App.5th 152, 169–170 (*Miguel R.*), citing *People v. Superior Court* (*Lara*), *supra*, 4 Cal.5th at p. 304.)

Defendant contends he must be given a new fitness hearing to allow the juvenile court to consider the now required relevant factors under Senate Bill 545 and to apply the clear and convincing evidence standard. Defendant disagrees with the People's argument that we should instead review the 2017 juvenile court proceedings and apply the test of harmlessness of *People v. Watson* (1956) 46 Cal.2d 818, 836 (*Watson*), under which defendant must show a reasonable probability of a different outcome.

Defendant quotes *In re F.M.* (2023) 14 Cal.5th 701, 715–716 (*F.M.*), to respond there is no basis for a harmless error analysis under *Watson, supra*, 46 Cal.2d 818 because "'[a]pplying *Watson* to assess the likelihood of a more favorable result does not address the risk of courts misapprehending the extent of their lawful authority in this particular context.'" In *F.M.* our Supreme Court addressed the juvenile court's failure to classify a wobbler offense as a misdemeanor or a felony, as required under section 702, and clarified the standard to be applied when a trial court failed to exercise its discretionary sentencing authority. (*F.M.*, at pp. 704–705.) Defendant also quotes *F.M.* at page 716: "[W]here the concern is that no discretionary decision was made, attempting to discern the likelihood of a 'more favorable' decision is a more speculative inquiry. Instead of hypothesizing what decision the juvenile court would have made if it had understood

(2025) 17 Cal.5th 388 but unrelated to the issue presented in the case before us. (See *In re J.M.*, Sept. 25, 2024, S286259.)

7

the extent of its lawful authority, reviewing courts have consistently held that remand is appropriate in these circumstances."

The juvenile court's ruling was a discretionary decision. (See *Miguel R., supra*, 100 Cal.App.5th at p. 165.) *Miguel R.*, cited by the People in support of their harmless error argument, was decided after Assembly Bill 2361 amended section 707, subdivision (a)(3), by adding the clear and convincing standard, and held: "We review the juvenile court's ruling on a transfer motion for abuse of discretion" (*Miguel R.*, at p. 165; accord, *In re J.S.* (2024) 105 Cal.App.5th 205, 211). "'The abuse of discretion standard is not a unified standard; the deference it calls for varies according to the aspect of a trial court's ruling under review. The trial court's findings of fact are reviewed for substantial evidence, its conclusions of law are reviewed de novo, and its application of the law to the facts is reversible only if arbitrary and capricious.'" (*Miguel R., supra*, at p. 165.) Thus, harmlessness is not the only issue; showing the juvenile court's ultimate ruling was an abuse of discretion also requires a review of the record, and if the court's findings were made by clear and convincing evidence, the high probability standard would apply on review. (Cf. *Conservatorship of O.B.* (2020) 9 Cal.5th 989, 1006–1007 [substantial evidence review].) It follows that, if the clear and convincing evidence standard should have been applied by the juvenile court, we determine whether "'a reasonable trier of fact could have made the finding of *high probability* demanded by' the clear and convincing evidence standard." (*Miguel R., supra*, at p. 165, italics added.)

Defendant argues the juvenile court did not apply the clear and convincing standard in 2017 because it was not then

8

required. Defendant also contends that in 2017 the juvenile court did not consider the factors it was required to give weight to, as they were then discretionary and are now mandatory. Defendant adds the record does not show that in 2017 the juvenile court considered evidence of abuse when assessing criminal sophistication, a factor added by Senate Bill 545. (See § 707, subd. (a)(3)(A).) Defendant appended to his motion to augment the record a copy of his mitigation brief submitted at the time of sentencing. That report catalogued childhood trauma, childhood and adolescent abuse, drug addiction suffered by defendant and more.[4] Noting the things defendant claims are not contained in the juvenile court record, defendant suggests the juvenile court did not understand the extent of its lawful authority. Citing *F.M., supra*, 14 Cal.5th at page 716, defendant claims because reviewing courts have consistently held that "remand is appropriate in these circumstances," it is appropriate here.

As first noted in the People's original brief, defendant did not ask to include the juvenile court record in the record on appeal. The People's motion to augment, filed with their supplemental brief includes the "Defense Transfer Hearing Brief" filed with the juvenile court prior to the 2017 hearing. The brief discusses the criteria to consider in determining fitness, which were enumerated in section 707, former subdivision (a)(2)(A) through (E), and the evidence supporting the factors for evaluating the criteria.[5] The same factors currently appear in

---

[4] Defendant also appended "Social History Report" and argues because this was compiled in 2022, it was not considered at the 2016 transfer hearing.

[5] The trial court's minutes of November 16, 2017, note the court is in receipt of the juvenile court minute order of

section 707, subdivision (a)(3)(A) through (E), although it is now mandatory to give weight to the factors. The transfer brief included the probation report, which was also before the juvenile court. The probation report provided an exhaustive account of defendant's childhood trauma, abuse, drug addiction and more. The only factor added since 2017 is "evidence offered that indicates that the person against whom the minor is accused of committing an offense trafficked, sexually abused, or sexually battered the minor." (§ 707, subd. (a)(3)(E)(iii).) In the transfer brief, there was some evidence alleging that as a minor defendant was having a sexual relationship with an adult woman. The People also attached to their motion to augment the juvenile court minute order of the hearing, which notes the court heard testimony from defense expert Dr. Nancy Kaser-Boyd, as well as argument from both sides before continuing the matter to review the preliminary hearing transcript, probation reports, and Dr. Kaser-Boyd's report.

Defendant's assignment of error in this appeal is the *trial court* erred in denying defendant's request for a retroactive transfer hearing. The People claim defendant failed to establish prejudice due to the denial because defendant has failed to show the result might have been different, either by a reasonable probability or a "'high probability demanded by' the clear and convincing evidence standard.'" (*Miguel R.*, *supra*, 100 Cal.App.5th at p. 165.) Defendant essentially responds that

October 26, 2017, which states: "[T]he court finds minor is not a fit subject to be dealt with under juvenile court law." In their motion to augment, the People have included the juvenile court minute order showing it considered the criteria in section 707, former subdivision (a)(2)(A) through (E).

10

remand should be automatic because the juvenile court record failed to contain the information now required by section 707. As the juvenile court record, other than defense counsel's brief and exhibits and a few other pages from the clerk's transcript, has not been made a part of the record of this appeal, we reject defendant's speculation regarding what the juvenile court did or did not consider or what weight it gave to that it did consider. "'[I]t is elementary that the function of an appellate court, in reviewing a trial court judgment on direct appeal, is limited to a consideration of matters contained in the record of trial proceedings, and . . . "[matters] not presented by the record cannot be considered on the suggestion of counsel in the briefs."'" (*In re Rogers* (1980) 28 Cal.3d 429, 437, fn. 6.)

"It is axiomatic that it is the burden of the appellant to provide an adequate record to permit review of a claimed error, and failure to do so may be deemed a waiver of the issue on appeal." (*People v. Akins* (2005) 128 Cal.App.4th 1376, 1385.) "While the defendant is entitled to a record adequate to afford a meaningful appeal, he bears the burden to show the deficiencies in the record are prejudicial." (*People v. Coley* (1997) 52 Cal.App.4th 964, 970.) If parts of the record are missing, defendant must attempt, if possible, to reconstruct them or obtain a settled statement. (See *People v. Osband* (1996) 13 Cal.4th 622, 661–663; *Coley, supra*, at pp. 969–972.) As defendant has failed to do so we deem the issue of the trial court's denial of defendant's request for transfer to be waived, and as defendant has thus not demonstrated error or prejudice, the order is presumed correct. (See *People v. Garza* (2005) 35 Cal.4th 866, 881.)

11

**II. Request for continuance and appointment of expert**

Defendant contends the trial court erred in denying his request for appointment of an expert to testify regarding juvenile brain development. Defendant misconstrues the issue. The trial court denied defendant's oral request for a continuance to find an expert to testify regarding juvenile brain development. If this court found the motion timely, the trial court alternately relied on Evidence Code section 352 to exclude the evidence described in defendant's offer of proof.

Thus, defendant must first address the timeliness of the motion for continuance. "Continuances shall be granted only upon a showing of good cause. Neither the convenience of the parties nor a stipulation of the parties is in and of itself good cause." (Pen. Code, § 1050, subd. (e).) "A showing of good cause requires a demonstration that counsel and the defendant have prepared for trial with due diligence." (*People v. Jenkins* (2000) 22 Cal.4th 900, 1037.) "It is a settled rule of practice that an application for a continuance is addressed to the sound discretion of the trial court . . . ." (*People v. Collins* (1925) 195 Cal. 325, 332; accord, *People v. Froehlig* (1991) 1 Cal.App.4th 260, 265.) "The granting or denial of a motion for continuance rests within the sound discretion of the trial court. [Citation.] That discretion, of course, must be exercised in conformity with the applicable law. A continuance may be granted only on the moving party's showing of good cause. [Citations.] Such a showing requires, inter alia, a demonstration that both the party and counsel have used due diligence in their preparations. [Citation.] [¶] It follows that on appeal, a ruling on a motion for continuance is subject to review under the abuse-of-discretion standard." (*People v. Mickey* (1991) 54 Cal.3d 612, 660.) "'"[D]iscretion is abused whenever the

12

court exceeds the bounds of reason, all of the circumstances being considered.””” (*People v. Hamlin* (2009) 170 Cal.App.4th 1412, 1450.) Where the "defendant has failed to demonstrate the court's ruling . . . exceeded the bounds of reason . . . , no abuse of discretion has been shown." (*Ibid.*)

Defendant failed to show diligence in preparing for trial and the need of expert testimony for trial, or making the request for continuance. In 2019, approximately a year and a half before trial began, he obtained an expert's report regarding juvenile brain development and its application to defendant.

On June 9, 2022, after voir dire had already begun and approximately one week before defendant made his request for continuance, the prosecutor moved to exclude mention of defendant's age, 16 years old, at the time of the murder. Defendant opposed the motion, stating his age would be relevant to the issue of his state of mind as a youthful offender and on the issue of specific intent. The prosecutor countered by noting he had received no discovery in that regard. The trial court denied the motion to exclude evidence of defendant's age but cautioned any argument regarding defendant's age or lack of cognitive ability would have to be based upon expert testimony. Defendant offers no explanation of his reasons for not requesting appointment of an expert witness before trial.

On June 15, 2022, defendant made a motion to continue after the prosecution had rested. Defense counsel indicated he would make a request for the appointment of an expert with regard to juvenile brain development. Counsel stated his offer of proof was that the expert's testimony would be relevant to specific intent in a homicide case in light of all the new expert information with regard to juveniles. The requested continuance

13

was oral, and counsel explained to the court he had tried unsuccessfully for the past week to contact potential experts. He never, however, explained his attempts. The prosecutor objected as such late discovery would probably lead the prosecution to request a continuance after receiving the information.

The trial court denied the request for continuance as untimely, noting the case had been pending in superior court for seven years—five years with another bench officer and two years with the current bench officer. The court also observed in the event the appellate court found the request timely, the trial court found nothing in the record to support giving expert testimony specific to defendant's capability to form specific intent. The court noted no witness had testified or was questioned regarding any deficiency in defendant's ability to understand. Applying Evidence Code section 352, the trial court concluded such evidence would be more prejudicial than probative and unduly consumptive of court time.

Defendant has made no effort here to meet his burden of demonstrating an abuse of discretion. No mention of the court's ruling on his motion for continuance was raised until his reply brief in response to the People's argument he must show the denial of the continuance was a prejudicial abuse of discretion, and the trial court's decision was arbitrary and capricious. Instead defendant claims the issue is whether the denial of a continuance to present "critical defense evidence violated [his] due process rights." Defendant cites no authority to support this assertion but instead refers to his opening brief at pages 26–28,

14

where defendant discussed the standard of review for the denial of due process not the denial of a continuance.[6]

"'The burden is on the party complaining to establish an abuse of discretion, and unless a clear case of abuse is shown and unless there has been a miscarriage of justice a reviewing court will not substitute its opinion and thereby divest the trial court of its discretionary power.'" (*Denham v. Superior Court* (1970) 2 Cal.3d 557, 566.) As defendant has failed to demonstrate an abuse of discretion or error in denying his request for continuance, we affirm the ruling that defendant's request was untimely, and need not discuss the court's alternative ruling.

## III. Effective assistance of counsel

Defendant contends counsel's failure to seek appointment of an expert on juvenile brain development at an earlier juncture amounted to ineffective assistance of counsel.

The Sixth Amendment right to assistance of counsel includes the right to the effective assistance of counsel. (*Strickland v. Washington* (1984) 466 U.S. 668, 686–687 (*Strickland*); see Cal. Const., art. I, § 15.) It is the defendant's burden to establish that counsel's assistance was constitutionally inadequate and resulted in prejudice. (*Strickland*, at p. 687; *People v. Rodrigues* (1994) 8 Cal.4th 1060, 1126.) "Reviewing courts defer to counsel's reasonable tactical decisions in examining a claim of ineffective assistance of counsel [citation], and there is a 'strong presumption that counsel's conduct falls

---

[6] Defendant cited *People v. Jackson* (2022) 75 Cal.App.5th 1, 27, which involved a new trial motion in a case where many pretrial continuances had been allowed, mostly at the request of the prosecution, and the appellate court did not address the defendant's motion for a continuance.

15

within the wide range of reasonable professional assistance.' [Citation.] Defendant's burden is difficult to carry on direct appeal, as we have observed: "'Reviewing courts will reverse convictions [on direct appeal] on the ground of inadequate counsel only if the record on appeal affirmatively discloses that counsel had no rational tactical purpose for [his or her] act or omission."'" (*People v. Lucas* (1995) 12 Cal.4th 415, 436–437 (*Lucas*).) To establish prejudice, defendant must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." (*Strickland, supra*, at p. 694.)

Quoting *Lucas, supra*, 12 Cal.4th at page 437, defendant argues the record on appeal ""'affirmatively discloses that counsel had no rational tactical purpose'"'" in failing to make an earlier request for an expert. Defendant reasons that prior to trial counsel was aware defendant's youth was relevant to the jury's consideration of the evidence of intent and premeditation. Defendant refers to the 2019 expert report and the in limine hearing of June 9, 2022, in which counsel objected to the prosecution's unsuccessful motion to exclude defendant's age at the time of the murder, both of which are discussed in part II above.[7] Defendant notes that due to the 2019 report, counsel knew of defendant's troubled background and the expert's conclusion, which defendant describes, as making "it likely that

---

[7] Defendant contends witnesses testified he acted impulsively, the shooting was not planned, and he regretted it. However the testimony cited came from witnesses who related what defendant told them.

16

he lacked intent to kill and did not willfully deliberate the killing."[8]

While we agree defense counsel knew long before trial that defendant's youth may have been relevant to the issue of impulsivity at the time of the shooting, we disagree this shows that counsel had no rational tactical reason not to have earlier requested the appointment of an expert to testify regarding juvenile brain development. On the contrary, counsel's awareness shows he had a great deal of time to and did carefully consider the subject. As our "scrutiny of counsel's performance must be highly deferential" (*Strickland, supra*, 466 U.S. at p. 689), we decline to assume counsel did not contemplate the issue of whether to raise it at trial, rather than make a tactical decision not to do so until a continuance would be necessary. (Cf. *People v. Medina* (1995) 11 Cal.4th 694, 772 [counsel may or may not have tactical reason for delay].) Counsel may have been contemplating calling defendant at trial and was concerned about incriminating statements in the expert's report. As the record does not affirmatively show otherwise, defendant has not demonstrated his claim should be reversed on direct appeal. (See *Lucas, supra*, 12 Cal.4th at p. 437.)

---

[8] The expert noted defendant claimed Mollett had been aggressive, disrespectful, and had threatened the brother of defendant's friend, "creat[ing] terror in [his] friend," and thus he may have acted in defense of another. Defendant claimed "that he acted impulsively when he saw Prince Mollett on the street, with 'no ponderance,'" and the expert concluded defendant's "history of impulsivity [made] it likely that he did not reflect on the *consequences* of such an act." (Italics added.) We observe that deciding to kill someone and considering the consequences for doing so are different concepts.

17

Defendant must show counsel's errors were so serious as to deprive him of a fair trial, and he must show he suffered prejudice by demonstrating a reasonable probability of a different outcome but for counsel's alleged inadequacies. (*Strickland, supra*, 466 U.S. at pp. 687–688.) Defendant has done neither. In discussing the lack of prejudice the People note Penal Code sections 28 and 29. Section 28, subdivision (a) excludes "[e]vidence of mental disease, mental defect, or mental disorder . . . to show or negate the capacity to form any mental state, including, but not limited to, purpose, intent, knowledge, premeditation, deliberation, or malice aforethought, with which the accused committed the act. [Such] [e]vidence . . . is admissible solely on the issue of whether or not the accused actually formed a required specific intent, premeditated, deliberated, or harbored malice aforethought, when a specific intent crime is charged." Section 29 provides: "In the guilt phase of a criminal action, any expert testifying about a defendant's mental illness, mental disorder, or mental defect shall not testify as to whether the defendant had or did not have the required mental states, which include, but are not limited to, purpose, intent, knowledge, or malice aforethought, for the crimes charged. The question as to whether the defendant had or did not have the required mental states shall be decided by the trier of fact." "Put differently, sections 28 and 29 do not prevent the defendant from presenting expert testimony about any psychiatric or psychological diagnosis or mental condition he may have, or how that diagnosis or condition affected him at the time of the offense, as long as the expert does not cross the line and state an opinion that the defendant did or did not have the intent, or malice aforethought, or any other legal mental state required for conviction of the

18

specific intent crime with which he is charged." (*People v. Cortes* (2011) 192 Cal.App.4th 873, 908.)

Defendant is vague as to how an expert would testify. He suggests the testimony would explain "the scientific underpinnings to the impulsivity of juveniles that diminishes their ability to make executive decisions." Defendant then takes a selective quote from *People v. Franklin* (2016) 63 Cal.4th 261, 288, and *Miller v. Alabama* (2012) 567 U.S. 460, 471, to support testimony regarding the science of juvenile impulsivity. These cases concern *sentencing*. Defendant does not explain how such testimony can provide a *defense*. As the People point out, "'[a] lack of maturity and an underdeveloped sense of responsibility are found in youth more often than in adults and are more understandable among the young. These qualities often result in impetuous and ill-considered actions and decisions.'" (*Roper v. Simmons* (2005) 543 U.S. 551, 569. This is common knowledge "as any parent knows and as the scientific and sociological studies . . . tend to confirm, '[a] lack of maturity and an underdeveloped sense of responsibility are found in youth more often than in adults and are more understandable among the young. These qualities often result in impetuous and ill-considered actions and decisions.' . . . 'Even the normal 16-year-old customarily lacks the maturity of an adult' . . . . It has been noted that 'adolescents are overrepresented statistically in virtually every category of reckless behavior.'" (*Ibid.*, citations omitted.)

Defendant thus fails to explain what an expert would add that would not be subject to exclusion for being used to invoke juror sympathy or that defendant did not harbor an intent to kill. In his opening brief, defendant's entire prejudice argument is

that "an expert witness would have shown the jury how [defendant]'s age could have impacted his ability to form the mental state required for first-degree murder, and jury notes evinced a concern with whether the prosecution proved its case, most notably, premeditation, but for counsel's dereliction there is a reasonable probability of a different outcome."

Defendant neglects to say how an expert would do this without giving an opinion "that the defendant did or did not have the intent, or malice aforethought, or any other legal mental state required for conviction of the specific intent crime with which he is charged." (*People v. Cortes, supra*, 192 Cal.App.4th at p. 908.)

## IV.    Requested remand for resentencing

Defendant requests remand for resentencing due to legal developments regarding Senate Bill 81 since the imposition of sentencing.  At his sentencing hearing defendant moved to strike his firearm enhancement of 25 years to life under Penal Code section 12022.53, subdivisions (d).  Senate Bill 81 was enacted in 2021 and amended Penal Code section 1385 effective January 1, 2022, which provides trial courts with guidance in exercising their discretion to dismiss sentencing enhancements.  (See *People v. Coleman* (2024) 98 Cal.App.5th 709, 723–724 (*Coleman*).) Amended Penal Code section 1385, subdivision (c)(2) enumerates mitigating circumstances the trial court "shall consider and afford great weight to" when deciding whether to strike enhancements from a defendant's sentence in the interest of justice.  (See Stats. 2021, ch. 721, § 1.)

Defendant contends because the trial court did not mention Senate Bill 81 at the sentencing hearing, the record affirmatively shows the court was unaware of its sentencing discretion under

amended Penal Code section 1385, and the court failed to exercise its discretion. Defendant cites *People v. Diaz* (2023) 97 Cal.App.5th 1172, 1187 (*Diaz*), where that defendant was sentenced about two months after Senate Bill 81 had become effective, and the publication of *People v. Tirado* (2022) 12 Cal.5th 688 (*Tirado*), which "held that the gun enhancement statute that added 25 years to life to [the defendant's] term gave trial courts the discretion to impose lesser uncharged enhancements of either 10 or 20 years" (*Diaz, supra*, at p. 1187, citing *Tirado*, at pp. 694–702). The *Diaz* court concluded: "The obvious reading of the record is that the busy actors in this case had not yet learned of the new developments." (*Diaz*, at p. 1188.)

*Diaz* is distinguishable, indeed inapplicable to defendant's case. The developments here were not *new*. Defendant was sentenced September 22, 2022, nearly nine months after Senate Bill 81 amended Penal Code section 1385 and the California Supreme Court published *Tirado*, *supra*, 12 Cal.5th 688, and more than five months before trial commenced, allowing sufficient time to "assume the trial court was aware of and followed applicable law." (*Coleman, supra*, 98 Cal.App.5th at p. 724.) Defendant acknowledges he asked the court at sentencing to strike the firearm enhancement under Senate Bill 81. Defendant acknowledges the trial court had before it his brief entitled "Defense Counsel's Views Concerning Sentencing," as well as defendant's "Youthful Offender Mitigation Brief" both documents putting forth defendant's youth and history of childhood abuse. The trial court allowed defendant to incorporate the mitigation brief into his motion to strike the firearm enhancement pursuant to the amendments to Penal Code section1385 enacted by Senate Bill 81. Defense counsel argued at

the hearing for the applicability of the amendments. Defendant was thus aware of Senate Bill 81 and certainly made the trial court aware of Senate Bill 81. It is thus defendant's burden is to "affirmatively demonstrate[]" the trial court misunderstood its sentencing discretion. (*Coleman, supra*, at p. 724.)

Defendant contends the trial court erred because its "sole reason for refusing to strike the enhancement was that the murder was a 'brutal senseless act of violence.'" It was error, defendant argues, "especially in light of the fact that, even before [defendant] was arrested, he expressed remorse for his conduct, and the evidence showed the shooting was unplanned; it 'just happened' when Keo handed [defendant] the gun." Defendant takes great liberty with what the evidence "showed," citing only defendant's own statements made to others.

To the extent defendant contends the trial court erred by expressing only one reason for denying his motion to strike the enhancement, we note Penal Code section 1385, subdivision (a) requires reasons to be stated on the record only if the court dismisses or strikes the enhancement. Under "the presumption of Evidence Code section 664, 'that official duty has been regularly performed[,]' . . . where a statement of reasons is not required and the record is silent, a reviewing court will presume the trial court had a proper basis for a particular finding or order." (*People v. Stowell* (2003) 31 Cal.4th 1107, 1114; see *Coleman, supra*, 98 Cal.App.5th at pp. 724–725.) "Defendant's citation to a silent record is insufficient to meet his burden to demonstrate an abuse of discretion." (*Coleman*, at p. 725.)

We conclude defendant had sufficient time and awareness to move alternatively for a lesser enhancement and request additional reasons from the court for its denial. We also find

22

weight was given to relevant mitigating circumstances as set forth in Penal Code section 1385, subdivision (c) and raised by defendant.  As defendant has failed to show he is entitled to resentencing, we deny his request for remand.

## DISPOSITION

The judgment is affirmed.

_____
CHAVEZ, J.

We concur:


_____
LUI, P. J.


_____
ASHMANN-GERST, J.

23